IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LOUIS G. DOVER** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 25-CV-1631** |
| | : | |
| **JOHN DOE SUPERVISOR,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                APRIL 9, 2025

*Pro se* Plaintiff Louis G. Dover ("Dover") brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971),[1] based on allegations that his Fourth Amendment rights were violated when he was searched by National Park Service ("NPS") rangers. Named as Defendants are Rangers David Teran, Sarah Cothren, and a John Doe supervisor. Dover seeks leave to proceed *in forma pauperis*. As set forth more fully below, Dover is granted *in forma pauperis* status, and this case will be dismissed because there is no *Bivens* remedy available to him.

**I.     FACTUAL ALLEGATIONS**[2]

In his complaint, Dover alleges that he was approached by Defendants Teran and Cothren on October 23, 2024, at approximately 12:45 a.m. near 4th and Walnut Streets in Philadelphia. (Compl. at 2.) He avers that Defendant Cothren appeared to be the lead officer and conducted the physical search at issue. (*Id.*) Defendant Cothren explained that "information received indicated that someone with a knife resembled Plaintiff and Defendants intended to search Plaintiff." (*Id.*)

---

[1] As discussed more fully below, *Bivens* provides a judicially recognized damages remedy for constitutional violations committed by federal actors in highly limited circumstances.

[2] The Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Dover's Complaint (ECF No. 2).

Dover claims that Defendant Cothren did not indicate who provided this information to Defendants when he questioned them, or if a crime was committed.[3] (*Id.*) Dover describes the search as follows: "At one point during the search[,] Plaintiff was told to face the steps with Plaintiff's back to the Defendants and street. [I]t was at that point that Plaintiff was touched in a place and manner which was not appropriate and Plaintiff's pants dropped." (*Id.*)

According to Dover, Defendants received training and instruction as to when a physical search of an individual is legal and appropriate but Defendants had no more than "mere suspicion or a hunch that Plaintiff possessed some sort of contraband to legally justify a search of Plaintiff." (*Id.*) Dover did not grant permission before the search was conducted and claims that Defendant Cothren "used deception and coercion" to conduct the search. (*Id.*) No contraband or weapon was found on Dover, and he was not charged with a crime. (*Id.*) Dover further asserts that there was no emergency and public safety was not an issue, Defendants did not articulate that Dover was involved in a crime or that a crime was committed by someone with a knife, and Defendants did not observe Dover commit, or attempt to commit, a crime. (*Id.*) He concludes that "[a] pretext was used to conduct a warrantless search and probable cause was not based on actual verifiable evidence" and that Defendants had no right to detain him or search him without reasonable suspicion that he committed a crime. (*Id.*)

After the October incident, Dover pursued administrative remedies to address the alleged wrongdoing by the NPS rangers. On November 13, 2024, Dover submitted an administrative complaint to the Department of the Interior, Office of Inspector General. (*Id.* at 1.) Michael Smith, an investigator, was assigned to the case, IMU-25-0179-C. (*Id.*) On November 30, 2024, Mr. Smith informed Dover by email that "the O.I.G. provided to the N.P.S. in [Philadelphia] the

---

[3] Dover also contends, confusingly, that "Defendants received specific, credible, information from an unknown source to justify the search of Plaintiff." (*See* Compl. at 3.)

information needed to take action." (*Id.*) Mr. Smith "further explained if Plaintiff wanted any further information to file a freedom of information request with the N.P.S. in [Philadelphia] citing the O.I.G. referral # listed above." (*Id.*) Mr. Smith also noted that the Department of the Interior, O.I.G. is not a statutory entity, court, or other administrative body. (*Id.* at 2.) Dover contends that there is no alternative forum, structure, or remedy left to pursue. (*Id.*)

Dover asserts that Defendants acted with malice and "after the search process was completed found the event so amusing, grinning from ear to ear." (*Id.* at 4.) As alleged, John Doe supervisor either approved of the specific search, had some knowledge of it beforehand, or failed to supervise his subordinates. (*Id.*) Dover claims that he suffered humiliation, embarrassment, and belittlement due to Defendants' actions. (*Id.*) Based on the foregoing allegations, Dover seeks declaratory relief,[4] as well as monetary damages. (*Id.*)

## II.   STANDARD OF REVIEW

The Court will grant Dover leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 because it appears that he is incapable of paying the fees to commence this civil action. Consistent with 28 U.S.C. § 1915(e)(2)(B), the court is required to dismiss the complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999),

---

[4] Declaratory relief is unavailable to adjudicate past conduct, so Dover's request is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84; *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Dover is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

Dover asserts Fourth Amendment claims based on the search by NPS rangers that was conducted on October 23, 2024. *Bivens* provides a damages remedy for constitutional violations committed by federal actors in very limited circumstances. *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok v. United States*, 868 F.3d at 189, 200 (3d Cir. 2017); *see Egbert*, 596 U.S. at 501. The Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due

Process Clause; (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment.  *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Ziglar*, 582 U.S. at 131 ("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself.").  "To preserve the separation of powers, the Court has 'consistently rebuffed' efforts to extend *Bivens* further . . . [because] [t]he Constitution entrusts Congress, not the courts, with the power to create new federal causes of action and remedies."  *Dongarra*, 27 F.4th at 180 (citing *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

Recent precedent has clarified the proper *Bivens* analysis in this Circuit.  The United States Court of Appeals for the Third Circuit (the "Third Circuit") explained that "the Supreme Court has set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case."  *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024).  "First, [courts] ask whether the 'case presents a new *Bivens* context' — *i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court" — using only *Bivens*, *Davis*, and *Carlson* as a benchmark as well as a "broad" understanding of what constitutes a new context.  *Id.* (quoting *Ziglar*, 582 U.S. at 139).  The non-exclusive list of factors to consider here includes:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

5

*Id.* (quoting *Ziglar*, 582 U.S. at 139-40). "Whether a context is new is an easily satisfied test because a modest extension of the *Bivens* action is still an extension, meaning even significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex Cnty.*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up); *Fisher*, 115 F.4th at 206 ("[A] case can differ meaningfully from *Bivens, Davis*, and *Carlson* even when it involves the same constitutional right as one of those cases.").

If the context is new, courts proceed to the second step of the inquiry, which "ask[s] whether there are 'special factors counselling hesitation' in extending *Bivens*" with a focus "'on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Kalu*, 113 F.4th at 326 (quoting *Ziglar*, 582 U.S. at 136); *see also Fisher*, 115 F.4th at 205 ("*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action." (quoting *Egbert*, 596 U.S. at 492)). Special attention is given to the existence of an alternative remedial structure and separation-of-powers concerns. *Kalu*, 113 F.4th at 326; *see also Ziglar*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Further, if there is any reason to think Congress might be better equipped to weigh the costs and benefits of a damages action, courts may not do so. *Fisher*, 115 F.4th at 205. That uncertainty alone forecloses *Bivens* relief. *Id.* "To sum up, . . . : unless a case is indistinguishable from *Bivens, Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts." *Id.*

Based on this framework, no *Bivens* remedy exists for Dover's Fourth Amendment claims. He alleges that he was stopped near 4th and Walnut Streets in Philadelphia and subjected to an improper search by NPS rangers. Although *Bivens* also concerned an alleged illegal search and

seizure in violation of the Fourth Amendment, Dover's claims are meaningfully different from those in *Bivens* because, *inter alia*, they involve a different category of defendants. *See Bivens*, 403 U.S. at 389-98 (Fourth Amendment unreasonable search and seizure claims against agents of the Federal Bureau of Narcotics). Because the Supreme Court has never authorized a *Bivens* action against NPS rangers for an alleged unconstitutional search, this case presents a new context. *See Jordan v. Barves*, No. 24-2030, 2024 WL 4579248, at *2 (3d Cir. Oct. 25, 2024) (*per curiam*) ("As this Court recently explained in applying *Egbert*, *Bivens* actions are cognizable only when the claim presented is 'indistinguishable' from a previously-recognized *Bivens* context." (quoting *Fisher*, 115 F.4th at 205)); *see also House v. Nat'l Park Serv.*, No. 22-970, 2024 WL 3401049, at *3 (D.N.M. July 12, 2024) (finding *Bivens* action against NPS officials presents a new category of defendants and, therefore, a new context).

Additionally, an alternative remedial structure exists for claims of wrongdoing by NPS rangers,[5] which limits the power of the judiciary to infer a new *Bivens* cause of action. *See House*, 2024 WL 3401049, at *5 (finding that the NPS's Office of Professional Responsibility and their corresponding Office of Inspector General each provide alternate remedies to address an excessive force *Bivens* claim); *see also Kalu*, 113 F.4th at 333 ("The presence of an alternative remedial structure through the [Bureau of Prison's Administrative Remedy Program] is sufficient by itself to preclude an extension of *Bivens*."); *Fisher*, 115 F.4th at 207 ("Any special factor – even one – suffices to foreclose a new *Bivens* cause of action. If there is a single reason to pause, then we may not recognize a *Bivens* remedy."). Thus, the special factors present here clearly counsel

---

[5] Indeed, it appears that Dover availed himself of this opportunity. (*See* Compl. at 1 (describing the administrative complaint that Dover filed with the Department of Interior, Office of Inspector General).)

against extending *Bivens* to Fourth Amendment claims based on a search by NPS rangers. Accordingly, Dover's claims will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Dover's Complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Leave to amend will not be given, as any amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). A dismissal Order follows, which shall be docketed separately. *See* Fed. R. Civ. P. 58.

*NITZA I. QUIÑONES ALEJANDRO, J.*